**Myzel FRIERSON, Appellant**

v.

**ST. FRANCIS MEDICAL CENTER; Correctional Medical Services, Inc.; Nurse Practitioner Fran Green; Dr. Stephen Hoey; Dr. Maurice Rosman; Nurse Practitioner Lisa Renee Kuntz; Charmaine Ifill.**

No. 12–2684.

United States Court of Appeals, Third Circuit.

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or Summary Action

Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6 March 28, 2013.

Opinion filed: May 24, 2013.

Myzel Frierson, Newark, NJ, pro se.

Franklin L. Flacks, Esq., Rottkamp & Flacks, Trenton, NJ, Colleen L. Brandt, Esq., Sean X. Kelly, Esq., Marks, O'Neill, O'Brien & Courtney, Pennsauken, NJ, for Appellee.

Before: RENDELL, JORDAN and VAN ANTWERPEN, Circuit Judges.

## OPINION

PER CURIAM.

Pro Se Appellant Myzel Frierson, appeals from an order of the United States District Court for the District of New Jersey granting Appellees' motions for summary judgment for his civil rights complaint pursuant to 42 U.S.C. § 1983, from an order denying his motion requesting that the District Court re-enter a prior order dismissing certain defendants from the case, and from an order denying his motion for additional time to serve process. Because this appeal does not present a substantial question, we will summarily affirm. *See* 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

### I.

Because we primarily write for the parties, we need only recite the facts necessary for our discussion. Frierson's claims concern the medical treatment he received while he was incarcerated in the New Jersey penal system between 2002 and 2007. Specifically, Frierson alleged that on December 18, 2002, he was sent to St. Francis Medical Center ("St. Francis")[1] from South Woods State Prison after suffering a high fever, muscle pain, joint pain and swollen hands. At St. Francis, Frierson was diagnosed with Systemic Lupus Erythematosus ("Lupus"), which he claimed

---

1. St. Francis is a private medical center that had a contract with the New Jersey Department of Corrections to provide medical services to New Jersey inmates during the relevant time period.

was a misdiagnosis. Frierson alleged that his request to be retested for Lupus was denied. To treat his condition, doctors prescribed the steroid prednisone. Frierson alleged that St. Francis did not disclose the long-term risks of taking prednisone to hi m, including avascular necrosis, which is the reduction of blood supply to the end of long bones, causing death to bone tissue. On January 3, 2003, Frierson was discharged from St. Francis and sent back to South Woods. St. Francis did not provide any follow-up care to Frierson with respect to his Lupus. Thereafter, Correctional Medical Services ("CMS") was in charge of Frierson's medical care.

In March 2003, two rheumatologists from the University of Medicine and Dentistry of New Jersey, hired by the Department of Corrections to conduct a medical evaluation of Frierson, informed Frierson of the risk of organ and joint damage associated with prednisone. The rheumatologists sent Dr. Stephen Hoey of CMS a letter, recommending that Frierson's prednisone dosage be tapered. Frierson received the prednisone in the reduced dosage and frequency as recommended by the rheumatologists. Frierson alleged that Drs. Hoey and Rosman, and Nurse Practitioner Lisa Renee Kuntz, all placed prednisone orders for hi m, but none of them warned him of the drug's side effects. Frierson alleged that as a result of taking the prednisone, he experienced steroid acne and he developed avascular necrosis, which caused him to endure severe pain and require serious narcotic medication. Frierson alleged that he repeatedly requested to be retested for Lupus from the

doctors and nurse practitioners at CMS, but these requests were denied.

Frierson also alleged that there was a two-week period from May 22 to June 5, 2007, when he did not receive his pain medication for his avascular necrosis. Frierson alleged that Nurse Charmaine Ifill discontinued his medication in contravention to doctor's orders.

During his incarceration, the prisons had a grievance procedure available to Frierson. Frierson did not follow the proper grievance procedure regarding his claims that his requests to be retested for Lupus were denied, that no one informed him of the side effects of prednisone, or that he was denied pain medication.

Frierson claims that he received inadequate medical treatment in violation of his Eighth Amendment rights. He brought claims against St. Francis, CMS, Nurse Practitioners Green and Kuntz, Drs. Hoey and Rosman, and Nurse Ifill. The District Court granted summary judgment as to all defendants on August 4, 2011, in part because Frierson failed to exhaust his administrative remedies and because Frierson did not have valid claims under the Eighth Amendment.[2] Frierson appealed, but we dismissed the appeal on the grounds that there were certain cross-claims pending. Thereafter, the District Court issued an order on January 20, 2012, noting that the cross-claims were moot and noting that nurse practitioner Kuntz had never been served with process and had never entered her appearance. The District Court ordered Frierson to inform the Court whether he conceded the claims against Kuntz,

---

**2.** The District Court also denied Frierson's motion to re-enter its prior order dismissing with prejudice defendants "New Jersey Department of Corrections and Department Officials." We conclude that the District Court properly denied this motion, as Frierson has not alleged claims against these parties, and

to the extent that there were claims against George W. Hayman, Commissioner of the Department of Corrections, the record shows that the claims against Hayman were dismissed with prejudice by joint stipulation on September 17, 2009.

and if not, to show cause as to why the Court should not dismiss them in light of his failure to timely serve Kuntz under Federal Rule of Civil Procedure 4(m). On April 23, 2012, Frierson filed a motion for extension of time to serve Kuntz. The District Court denied the motion, dismissed the claims against Kuntz without prejudice and ordered the Clerk to reclose the file. Frierson timely filed this appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir.2010). In considering the record, we "apply[ ] the same standard that the court should have applied." *Id.* Summary judgment is only proper where no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a). We review the dismissal pursuant to Rule 4(m) for abuse of discretion. *Boley v. Kaymark*, 123 F.3d 756, 757 (3d Cir.1997). We may summarily affirm on any basis supported by the record if the appeal does not present a substantial question. *Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir.2011) (per curiam).

## III.

Section 1983 provides private citizens with a means to redress violations of federal law committed by state officials. *See* 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff "must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir.2009).

Frierson alleges that CMS, Drs. Hoey and Rosman, and Nurse Practitioner Green violated his Eighth Amendment rights by denying his requests to be retested for Lupus, failing to inform him of the side effects of prednisone, and denying him pain medication. However, we agree with the District Court that Frierson failed to exhaust his administrative remedies with respect to these claims.[3]

Under the Prison Litigation Reform Act ("PLRA"), inmates must exhaust their administrative remedies before filing a suit alleging specific acts of unconstitutional conduct by prison officials. 42 U.S.C. § 1997e(a). A prisoner must exhaust these remedies "in the literal sense;" no further avenues in the prison's grievance process should be available. *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir.2004). "[I]t is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

The record shows that during Frierson's incarceration at South Woods, where he was treated by Drs. Hoey, Rosman, and Nurse Practitioners Green and Kuntz, Frierson was required to exhaust a four-step inmate grievance and tracking program and then file a complaint with the Office of the Corrections Ombudsman to address any outstanding concerns or complaints. Frierson conceded that he did not file any grievances regarding his claim that his requests to be retested for Lupus were denied. Moreover, Frierson did not file

---

**3.** When Frierson was treated by nurse Ifill, he was incarcerated at Northern State Prison. While there is no evidence that Frierson filed a proper grievance with respect to his claims against nurse Ifill, and thus did not exhaust his administrative remedies, the Inmate Handbook for Northern State Prison is not part of the record. Accordingly, we will summarily affirm the District Court's judgment with respect to the claims against Ifill on other grounds, as discussed *infra*.

any grievances regarding his claim that the defendants failed to inform him of the side effects of prednisone. To the extent that Frierson did file grievances with respect to his medical treatment, the record shows that Frierson did not file any appeal of the outcome of any of these initial grievances, as required by the grievance procedure. Thus, we conclude that the District Court properly granted Drs. Hoey's, Rosman's, and Nurse Practitioner Green's motion for summary judgment because Frierson failed to properly exhaust his administrative remedies.[4]

With respect to Frierson's claims against Nurse Ifill, in the context of Eighth Amendment claims based on medical care, he must demonstrate deliberate indifference to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir.2009). For instance, a plaintiff may make this showing by establishing that the defendants "intentionally den[ied] or delay[ed] medical care." *Id.* (quotation marks omitted). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound

in state tort law." *United States ex rel. Walker v. Fayette Cnty.,* 599 F.2d 573, 575 n. 2 (3d Cir.1979) (internal quotation marks omitted). Frierson alleged that Nurse Ifill directed Dr. Hochberg to stop his pain medication, but the record shows that Dr. Hochberg did prescribe Frierson pain medication during the relevant time period.[5] Moreover, there is nothing in the record to support Frierson's speculation that Nurse Ifill told Dr. Hochberg to stop his pain medication. Therefore, we agree with the District Court that there is nothing in the record to support the claim that Nurse Ifill acted with reckless disregard to Frierson's medical needs.[6]

Frierson also has claims against St. Francis and CMS. These entities may be liable based on a suit brought pursuant to § 1983 only if "the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir.1996) (citation omitted). Frierson alleged that with respect to CMS, it had a policy of refusing treatment, appointments and medication. With respect to St. Francis, Frierson alleged that it had a policy of failing to monitor its patients after they were discharged from the hospital. We agree with the District Court that there is nothing in the record to support these allegations and conclude that Frierson's

---

4. Nurse Practitioner Kuntz has not been served process and the District Court denied Frierson's motion for extension of time to serve Kuntz. We conclude that the District Court did not abuse its discretion in dismissing Kuntz because an extension would have been futile, in light of the fact that Frierson failed to exhaust his administrative remedies.

5. Dr. Hochberg is not a defendant in this suit.

6. We also agree with the District Court that Frierson does not have a valid Eighth Amend-

ment claim for inadequate medical treatment against Drs. Hoey, Rosman, and Nurse Practitioner Green, because their failure to retest Frierson and warn him of the effects of prednisone does not amount to deliberate indifference. Because we conclude that Frierson's claims with respect to these defendants are barred because he did not exhaust his administrative remedies, there is no need to analyze the merits of the Eight Amendment claim further.

claims against CMS and St. Francis fail as a matter of law.

## IV.

For the foregoing reasons, no substantial question is presented and we will summarily affirm the judgment of the District Court. Appellant's outstanding motions are denied.